UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| HYE YOUNG SON, et al. | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) Civil Action No. 1:20-cv-1047 (WEF) |
| | ) Consolidated |
| AGAPE HEALTH MANAGEMENT, INC., | ) |
| et al. | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

## <u>MEMORANDUM OPINION AND ORDER</u>

This consolidated case is before the Court on Plaintiffs' Motion for Attorney's Fees and Costs (Dkt. 253). The underlying claims were brought by 10 individual plaintiffs against their employer pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207.[1] The parties ultimately entered into settlement agreements the terms of which were approved by the Court. (Dkts. 255 through 265). The settlement agreements provide for this Court to make an award of reasonable attorney's fees and costs to Plaintiffs' counsel.[2] For the reasons set forth below and in accordance with the Fourth Circuit's decision in the related case of *Jong Lee v. Agape Health Management, Inc.*, No. 23-1582, 2024 WL 3565309, (4th Cir. July 29, 2024), the Court **GRANTS** Plaintiffs' motion (Dkt. 253) but for an amount less than Plaintiffs' counsel requested.

---

[1]     The 10 plaintiffs are Hye Young Son, Myeong Suk Choi, Hee Sang Kim, Bo Young Lee, Yoon Jung Yim, Yoon Hee Oh, Kyong Sim Che, Soonkum Park, Jae Min Lee, and Myoung Hui Montgomery.

All plaintiffs were represented by the same attorney, Michael Ryu, Esquire.

[2]     The settlement agreements required the parties to meet and confer in an attempt to agree on an award of attorneys' fees and costs. If the parties were unable to agree, then the issue would be decided by this Court. The parties met and conferred but were unable to reach an agreement.

Specifically, the Court finds that a total award of **$390,297.57**, consisting of **$353,397.43** for attorney's fees and **$36,900.14** for costs and expenses, is reasonable and supported by the record in this case.

## I.   Factual and Procedural Background

As it currently stands, this civil action is the result of the consolidation of six separate cases (1:20-cv-1047; 1:21-cv-97; 1:21-cv-408; 1:21-cv-435; 1:21-cv-696; and 1:21cv-756, collectively referred to as the "*Son* case") brought by Plaintiffs against their employer, Agape Health Management, Inc. ("Agape") and its owner, chairman, and CEO Sun Ok Lee and president Dong Chui Choi (collectively the "Defendants").[3]   (Dkts. 52, 145, 252).   Agape is a company that provides adult care services, including home care.   Plaintiffs were employees of Agape who worked directly with patients as aids and were paid an hourly wage.   The common allegation among all 10 Plaintiffs is that Defendants violated the FLSA by failing to pay Plaintiffs the required time and a half for overtime work.   After filing suit, several Plaintiffs brought additional claims for retaliation in violation of the FLSA, 29 U.S.C. § 215, as well as Virginia common law civil conspiracy and other tort claims for retaliatory acts that allegedly occurred after the inception of their cases.   Defendants also pursued counterclaims against several Plaintiffs for fraud.

The procedural history of the *Son* case stretches over the better part of two years and includes dozens of motions filed by both parties.   Some motions simply requested changes to the Court's Scheduling Order and discovery deadlines, but other motions raised substantive pretrial issues, including multiple motions to dismiss the complaint and amended complaint, motions to

---

[3]   By Order of the District Judge the cases were consolidated for pretrial proceedings under case number 1:20-cv-1047. (Dkts. 52, 145).

A seventh related case, *Jong Cheon Lee v. Agape Health Management, Inc. et al*, 1:22-cv-311 (WEF) was not consolidated with the other six cases and will therefore be analyzed separately.

compel discovery, motions for sanctions, a motion for a temporary restraining order and preliminary injunction, motions for joinder, motions to sever, and motions for partial summary judgment. Eventually, after the parties engaged in three settlement conferences over a three-month period that were mediated by the undersigned United States magistrate judge, all claims were settled. The settlement agreements required, among other things, Defendants to make payments to each individual Plaintiff and to pay reasonable attorney's fees and costs of litigation to Plaintiffs' counsel. The parties agreed on the amount to be paid to each Plaintiff, but the parties could not agree on the award of attorney's fees and costs, and instead decided to submit the matter to the undersigned for determination. Thus, on February 21, 2023, the parties consented to the undersigned's jurisdiction to approve the FLSA settlements and determine the appropriate grant of attorney's fees and costs. (Dkt. 250). On March 3, 2023, the District Judge entered an order conferring jurisdiction on the undersigned. (Dkt. 251). The undersigned then ordered that the *Son* case would remain consolidated for purposes of determining attorney's fees and costs. (Dkt. 252). On March 27, 2023, the undersigned approved the settlements as to each Plaintiff in the *Son* case but continued for further briefing and argument the issuance of attorney's fees and costs. (Dkts. 256, 257, 258, 259, 260, 261, 262, 263, 264, 265).

On March 24, 2023, Plaintiffs' counsel filed his Motion for Attorney's Fees in the *Son* case, as well as a brief in support. (Dkt. 253). Defendants filed a response in opposition on April 7, 2023. (Dkt. 266). Plaintiffs' counsel filed a reply in response to Defendants' opposition on April 18, 2023. (Dkt. 273). The undersigned heard oral argument from the parties on April 28, 2023 (Dkts. 277, 290) and, in an ensuing order, awarded Plaintiffs' counsel, Mr. Ryu, $350,000 in attorney's fees and $39,047.18 in costs. (Dkt. 278). The parties cross-appealed the award and on July 29, 2024, the United States Court of Appeals for the Fourth Circuit issued an opinion vacating

this Court's award of attorney's fees and remanding for further proceedings.  *Jong Lee v. Agape Health Management, Inc.*, No. 23-1582, 2024 WL 3565309, (4th Cir. July 29, 2024).  Thereafter, the parties filed supplemental briefs (Dkts. 291, 294) and the undersigned heard additional oral argument from the parties on September 20, 2024, and took the matter under advisement to issue this Order.

## II.   Discussion

A. <u>Standard of Review</u>

In an FLSA action, the statutory fee-shifting mechanism provides that a "prevailing party" is entitled to recover "reasonable attorney's fees" and the "costs of the action." *See* 29 U.S.C. § 216(b).  When an FLSA action is disposed of on the merits, the identity of any "prevailing party" is typically clear, although in cases where the parties settle, they may also choose to agree that a party has "prevailed." *See Jackson v. Estelle's Place, LLC*, 391 F. Appx. 239, 242 (4th Cir. 2010) ("because the parties have agreed that Appellants are prevailing parties, Appellants are entitled to an award of attorney's fees and costs that they establish as reasonable").  However, where, as in this case, the parties' settlement agreement does not establish a "prevailing party" but provides that the Court will determine "reasonable attorney's fees" to be awarded to Plaintiffs in case the parties fail to agree, the Court will apply a general "reasonableness" standard in making the award. *Jong Lee*, No. 23-1582, at *7 (citing *In re Abrams & Abrams*, *P.A.*, 605 F. 3d 238, 243 (4th Cir. 2010) (internal quotation marks and citations omitted) (collecting cases) ("Nor is the reasonableness standard limited to the fee-shifting context . . . the law of this circuit has long been clear that federal district courts have inherent power and an obligation to limit attorneys' fees to a reasonable amount")).

The Court must undertake a three-step process to properly calculate an attorney's fee

award. *McAfee v. Boczar*, 738 F. 3d 81, 88 (4th Cir. 2013).  First, the Court must "determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Id*. (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F. 3d 235, 243 (4th Cir. 2009)).  At this step, "[t]o ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply" the factors adopted in *Barber v. Kimbrell's, Inc.*, 577 F. 2d 216, 226 n.28 (4th Cir. 1978). *Id.* (citing *Johnson v. Georgia Highway Express Inc.*, 488 F. 2d 714, 717–19 (5th Cir. 1974)). The twelve *Barber* factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 88 n.5.

At the second step, the Court must "'subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" *Id*. (quoting *Robinson*, 560 F. 3d at 244).

At the third and final step, the Court "should award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff'" *Id*. (quoting *Robinson*, 560 F. 3d at 244).

### Step 1:  Calculating the Lodestar Figure

#### a.  Reasonable Rates.

The party seeking attorneys' fees carries the burden of establishing the reasonableness of the hourly rates requested. *Robinson*, 560 F. 3d at 244 (citing *Plyler v. Evatt*, 902 F. 2d 273, 277 (4th Cir. 1990).  "The fee applicant must produce satisfactory *specific evidence* of the prevailing

market rates in the relevant community for the type of work for which he seeks an award." *Plyler*, 902 F. 2d at 277 ) (emphasis added) (citing *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir.1987)). Thus, "[t]he market rate should be determined by evidence of what attorneys earn from paying clients for similar services in similar circumstances, which, of course, may include evidence of what the plaintiff's attorney actually charged his client." *Robinson,* 560 F. 3d at 244 (quoting *Depaoli v. Vacation Sales Assocs., L.L.C.*, 489 F.3d 615, 622 (4th Cir. 2007) (internal quotation marks omitted)). Generally, the moving party will submit in support, in addition to his own affidavits (which are not sufficient taken alone),[4] "affidavits from disinterested counsel, evidence of awards of similar cases, or other specific evidence that allows the court to determine 'actual rates which counsel can command in the market.'" *Project Vote/Voting for America, Inc. v. Long*, 887 F. Supp. 2d 704, 710 (E.D. Va. 2012) (quoting *Spell*, 824 F. 2d at 1402). For purposes of determining the prevailing rate, the relevant market "is ordinarily the community in which the court where the action is prosecuted sits." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994). Additionally, "[i]n determining the reasonable rates, the Court is required to consider the relevant [*Barber*] factors." *McNeil v. Faneuil, Inc*., No. 4:15-cv-81, 2017 WL 9771834, at *5 (E.D. Va. Nov. 8 2017), *R&R adopted*, 2018 WL 1411017 (E.D. Va. March 21, 2018)).

In this case, Plaintiffs' counsel, Mr. Ryu, requests an award at the rates of $430 (2020),[5] $480 (2021), $510 (2022), and $560 (2023) for himself,[6] and $420 (2021), $460 (2022), and $510

---

[4]      *Grissom v. The Mills Corp*., 549 F. 3d 313, 323 (4th Cir. 2008); *Plyler*, 902 F. 2d at 277.

[5]      While Plaintiffs' briefs (Dkt. 253 at 19) repeatedly state that Michael Ryu's hourly rate for 2020 was $420, counsel's billing records show that the rate he charged in this matter in 2020 is $430.

[6]      As an initial matter, the Court rejects Defendants' argument that Plaintiffs' counsel somehow "lack[ed] candor" to the tribunal by failing to disclose that he raised his rates despite the retainer agreements not expressly providing for any increases. (Dkt. 294 at 6-9). This omission is immaterial because Plaintiffs' counsel represented his

(2023) for his associate, Sara Ryu. (Dkt. 253-1).   To satisfy his burden of establishing the prevailing market rate for attorney's fees in the Eastern District of Virginia, Plaintiffs' counsel initially offered: (1) his billing records in this matter; (2) an affidavit from himself; and (3) a copy of the *Laffey* matrix.   However, on appeal, the Fourth Circuit held in the related case that "Plaintiffs' prevailing hourly-rate evidence is inadequate to support the award" as "Plaintiffs offered no specific evidence that the hourly rates sought coincided with the then prevailing market rates of attorneys in [this legal community] of similar skill and for similar work, which Fourth Circuit case law required him to do."[7] *Lee*, No. 23-1582, at *10 (internal quotation marks omitted). Moreover, the Fourth Circuit noted that "[t]he district court's failure to address the approximate 30 percent raise lead counsel gave himself over the course of these cases is also a problem," and that "the Laffey matrix is insufficient to carry plaintiff's burden." *Id.* (citing *Robinson*, 560 F.3d at 245, *Grissom*, 549 F. 3d at 323).

On remand, Plaintiffs' counsel submitted (1) a sworn declaration from himself that he billed a different client at the rate of $560 an hour for work unrelated to wage and hour disputes in 2023, and the same rate, for the same client, for wage and hour defense matters in 2024; and (2) portions of Wolters Kluwer's Real Rate Report for the years 2020 to 2023. (Dkt. 291-1, 291-2,

---

clients on a contingency basis that effectively provided Plaintiffs would not bear the hourly costs of their attorneys' services, and the parties expressly agreed the Court would determine reasonable attorneys' fees.  At no time has the undersigned questioned Plaintiffs' counsel's candor to the Court.

[7]     Furthermore, while not directly addressed on appeal to the Fourth Circuit, the Court now finds that Plaintiffs' citation of support in the rates in *Jang et al v. Friends Health Care Team, Inc.*, *et al.*, No. 1:21-cv-00093 (E.D. Va.) and *Hong v. Mommy's Jamaican Market Corp. et al.*, (1:20-cv-09612) (S.D.N.Y.) is also insufficient to carry Plaintiffs' burden of proof. As Defendants correctly observe, Plaintiffs' assertion that the Court "approved" an (imputed) $570 hourly rate in *Jang* is not relevant here because in that case, the Court generally accepted as "fair and reasonable" a settlement negotiated between the parties in which Mr. Ryu was to be paid one-third of Plaintiffs' total recovery. *Jang*, No. 1:21-cv-00093, Dkt. 17 at 9, Dkt. 21.  The Court never explicitly determined the reasonableness of Mr. Ryu's hourly rate and even if the Court had done so there is no evidence the rates charged in the Southern District of New York are materially similar to rates charged in the Eastern District of Virginia.  Similarly, *Hong* was litigated outside of this district and is not of particular assistance to this Court in determining reasonable rates in *this* district.

291-3).   The Court finds, however, that these materials, even taken with Plaintiffs' prior submissions, are still insufficient to satisfy their burden to establish the prevailing market rate.[8] Mr. Ryu's second sworn declaration carries little weight because such a self-serving statement based on counsel's own billing practices is an insufficient reflection of "the prevailing market rates in the relevant community."[9]   Counsel provides no external evidence such as an affidavit from an attorney who has experience prosecuting FLSA matters in this community.   Moreover, what Plaintiffs' counsel charged for wage and hour defense work in *2024* is not entirely relevant to what he charged for similar work in years past, particularly in light of the multiple significant increases in counsels' rates over the course of this case.

The Real Rate Reports are also unpersuasive.   The Court takes notice of the fact that these reports are derived "from the *actual* rates charged by law firm professionals as recorded on invoices submitted and approved for payment." (Dkt. 291-2 at 5).   While these reports may theoretically be valuable in establishing the relevant market rate in some cases, it cannot be established that such reports are valuable in *this* case.   Courts have repeatedly observed the Reports' "methodology is opaque; it claims to be based on [actual data] but does not explain whether its sample is representative of the [judicial district] market as a whole—i.e., whether its sample is skewed toward litigation partners working for large corporate law firms—or how it normalizes the data." *Hicks v. Vane Line Bunkering, Inc.*, 2013 WL 1747806, at *9 (S.D.N.Y. Apr.

---

[8]      Plaintiffs' counsel has now had two opportunities to establish a record that supports his requested hourly rate.

[9]      *See Project Vote/Voting for America*, 887 F. Supp. 2d at 710 ("Affidavits from the prevailing party alone are not sufficient.") (citing *Plyler*, 902 F 2d at 277).   Mr. Ryu's second sworn declaration has little probative value even when viewed in conjunction with the other evidence.   While the Court understands Mr. Ryu's suggestion that few FLSA defense attorneys would provide him an affidavit and that plaintiff's attorneys are rarely paid by their clients directly (Dkt. 291 at 1), such concerns do not preclude him from obtaining affidavits of disinterested plaintiff's attorneys attesting "to [his] experience . . . and the reasonableness of his hourly rate and the hours expended" more generally, as is common practice in this field. *Smith v. Q.E.D. Systems, Inc.*, 2020 WL 975368, at *4 (E.D. Va. Feb. 11, 2020); *Funkhauser v. City of Portsmouth, Virginia*, 2015 WL 12765639, at *4 (E.D. Va. May 14, 2015).

16, 2013); *see, e.g.*, *Cortes v. Juquila Mexican Cuisine Corp.*, 2021 WL 1193144, at *5 (E.D.N.Y. Mar. 29, 2021) ("The Real Rate Report is insufficient to meet Plaintiffs' burden to demonstrate that the requested rates conform to market rates for . . . representation of employees in wage-and-hour litigation [] in this district.").  Indeed, while the Reports' definition of the Washington, D.C. area apparently includes Arlington and Alexandria (Dkt. 292-2 at PageID# 4106), it is unknown if the Reports' data sample is, for example, over-representative of Washington, D.C. and thus a poor reflection of the market in the Eastern District of Virginia.  Moreover, the Reports' analyses for the practice area most relevant to this case and Plaintiffs' counsel ("Employment and Labor: Other") only applies to firms of more than 200 lawyers which may have a significantly different client base and billing practices than that of a solo practitioner such as Plaintiffs' counsel. (Dkt. 291-2 at PageID# 4105).  The Real Rate Reports suffer from the same flaw as the *Laffey* matrix in that it is unclear whether or how they are "reliable indicator[s] of the hourly rates of litigation [or more specifically, wage-and-hour] attorneys in [Alexandria], Virginia." *Robinson*, 560 F. 3d at 245 (quoting *Grissom* 549 F. 3d at 323).

Given the limited persuasive evidence before the Court, Defendants argue that Plaintiffs' counsel has failed to satisfy his burden of establishing the reasonableness of the requested rates as to both himself and Sara Ryu.[10]  As a result, Defendants contend the Court should not require Defendants to pay any of Plaintiffs' attorney's fees and costs, particularly because this is not a case arising under the FLSA's mandatory fee-shifting provision, 21 U.S.C. § 216(b).  Defendants further argue that Plaintiffs' counsel should be compensated—if at all—by the individual Plaintiffs based on a percentage of each settlement, which was an option under the Plaintiffs' retainer

---

[10]      Plaintiffs never submitted any materials related to Sara Ryu's billing rate.  However, at the September 20, 2024 hearing, Michael Ryu represented that he supervised and approved Ms. Ryu's work.

agreements with counsel.  (Dkt. 294 at 8–9).  Defendants cite no authority that compels such a result, and the Court rejects this argument.  As a condition of settlement, the parties clearly agreed that Defendants would pay Plaintiffs' reasonable attorney's fees and costs.  This understanding was plainly set forth in the settlement agreements, memorialized in the Court's approval of each settlement agreement, rooted in both parties' briefing pertaining to attorney's fees and stated on the record during the first oral argument on this issue.  (Dkts. 253–266, 273, 277–78).[11]  The Court fully intends to honor the agreement of the parties and make an award of attorney's fees and costs.  To do otherwise would shift the financial burden from Defendants to the individual plaintiffs and thereby fundamentally alter a material term upon which this case was settled.[12]  Defendants' position would lead to a result that is patently unfair and wholly unanticipated by the parties at the time the agreement was formed.

Even though Plaintiffs' counsel has developed an unremarkable record, the Court is nevertheless in a position to give full effect to the reasonableness standard the Fourth Circuit set in this case, which is "not limited to the fee-shifting context." *Lee*, No. 23-1582, at *7.  Under that framework, the Court must now "turn to other sources to ascertain reasonable hourly rates."[13] *Page v. Virginia State Board of Elections*, 2015 WL 11256614, at *5 (E.D. Va. March 11, 2015).

A reliable starting point to ascertain a reasonable hourly rate for Mr. Ryu is the opinion of United States District Judge Leonie M. Brinkema in *Cho v. Joong Ang Daily News Washington*,

---

[11]      The Court notes that Defendants' current counsel, James Victory, Esquire, did not represent Defendants during the settlement negotiations, approval of the settlement agreements or during the initial contested motions for attorney's fees and costs.

[12]      The Court notes that to adopt Defendants position would also result in a significant reduction in the amount of money actually received by each individual Plaintiff.

[13]      Defendants appeared to agree as much in their original briefing on the initial motion for attorneys' fees. (Dkt. 266 at 19).

*Inc., et al.*, No. 1:18-cv-1062-LMB-IDD, Dkt. 92, 2020 WL 1056294 (E.D. Va. March 4, 2020). In the *Cho* case, which is strikingly similar to this case and cited and argued by both Plaintiffs' counsel and Defendants, Judge Brinkema ruled that as recently as 2019, a rate of $350 per hour was a reasonable fee charged by Mr. Ryu for prosecuting an FLSA case in this District. *Id.* at *10. In fact, during the initial briefing regarding attorney's fees and costs, Defendants' counsel (who is not Defendants' current counsel) suggested the Court use the findings in the *Cho* case to establish a reasonable rate for Mr. Ryu in this case. (*See* Dkt. 266 at 20 ("If [] the Court were inclined to determine a reasonable rate for Mr. Ryu, the Court need look no further than his rate in the *Cho* matter, while allowing for reasonable percentage increases each year")).[14]  The Court agrees that the *Cho* case is the proper starting point.  There are numerous parallels between the *Cho* case and the case at hand, but most critically, *Cho* involved the same plaintiffs' counsel, Michael Ryu, the same defense counsel, James Victory, materially similar FLSA overtime and retaliation claims, and in a contested hearing regarding an award of attorney's fees the Court was called upon to determine the reasonableness of Mr. Ryu's hourly rate and to do so in the context of this legal community. *Cho*, 2020 WL 1056294,. at *1, 14.

The *Cho* case was litigated from 2018 to 2019 and was resolved when the plaintiffs accepted a Rule 68 offer of judgment from the defendants that also provided that the defendants would pay an additional amount for reasonable attorney's fees and costs as determined by the Court. *Id.* at *6.  Judge Brinkema subsequently found that Michael Ryu's requested hourly rate of $350 was reasonable. *Id.* at *10.  In doing so, Judge Brinkema expressly considered Mr. Ryu's

---

[14]     Mr. Victory was lead counsel for Defendants through most of the pretrial litigation.  Mr. Victory was replaced as lead counsel by Maureen Ross Knight, Esquire of the law firm of Constangy, Brooks, Smith & Prophete LLP. (Dkt. 213).  Ms. Knight represented Defendants through the settlement conferences, the approval of the settlement agreements and the initial litigation regarding attorneys' fees and costs. (250, 255-68, 270-71, 275-76, 278).  Ms. Knight's firm was replaced for purposes of appeal (Dkt. 286) and eventually Mr. Victory re-engaged as lead counsel representing Defendants on this motion.

"level of experience and skill level" which goes to *Barber* factors three and nine, crediting his fifteen years in the practice of law, multi-state litigation experience including "many wage and hour cases," and Korean language skills, which were crucial for communicating with his client and understanding relevant case documents. *Id.* at *9. The Court also noted that a rate of $350 was "consistent with previous attorneys' fees awards granted by this court," which bears on *Barber* factor twelve. *Id.* at *10 (citing *Jackson v. Estelle Place, LLC*, l:08-cv-984, 2009 WL 1321506 (E.D. Va. May 8, 2009). Although the *Cho* defendants "question[ed] Ryu's reputation and ability," Judge Brinkema declined to reduce Michael Ryu's hourly rate on such a basis, noting that his rate was "already below the range provided by the Vienna Metro matrix for attorneys with his level of experience"[15] and that concerns about inefficient use of time would be captured in the reasonable hour analysis. *Id*.

Similar findings are warranted in the case now before the Court. As to *Barber* factors three and nine, Mr. Ryu has now been practicing law for twenty years, is admitted in the federal and state courts in five states, and continues to represent plaintiffs in wage-and-hour as well as other employment related cases. (Dkt. 253 at 19). Sara Ryu is Michael Ryu's law partner, has been practicing law for twenty-two years, and is admitted to the Bar of New York. *Id*. Both have Korean language skills and an understanding of the Korean community and culture that were important to the prosecution of this case, as several of their clients spoke primarily Korean and only limited English. (Dkt. 253 at 17–18). Thus, consistent with Defendants' previous suggestion (Dkt. 266 at 20), the Court begins with Judge Brinkema's finding in the *Cho* case that a rate of $350 per hour is reasonable for Mr. Ryu's legal services. Sara Ryu was not involved in the *Cho* case, but the record indicates that she is an experienced and competent attorney, and with respect to a reasonable

---

[15]        *See infra* note 17.

billing rate, is similarly positioned to Mr. Ryu.  However, given Mr. Ryu's representation at the September 20, 2024 hearing that Ms. Ryu worked on this case under his supervision and always billed at a slightly lower rate, it is appropriate to begin with a $330 hourly rate for Ms. Ryu.[16]

However, these amounts are simply starting points because Plaintiffs' counsel should be afforded some reasonable increase in compensation as time passes, skill and experience is further developed, and economic circumstances change.  Indeed, Defendants' previous counsel acknowledged as much when they argued that the Court should apply the rate approved by the Court in the *Cho* matter, "while allowing for reasonable percentage increases each year."  (*See* Dkt. 266 at 20).  Determining "reasonable percentage increases" from the conclusion of the *Cho* case in 2019 to the conclusion of the *Son* case in 2023 is a challenge given that Plaintiffs' counsel's explanation for the rate increases is simply that "[i]n 2020, [he] realized he was grossly undercharging compared to other lawyers of similar experience [and] decided to raise his billing rate." (Dkt. 273 at 27).[17]  This reasoning is inadequate to justify "the approximate 30 percent

---

[16]    The Court finds Defendants' arguments that Sara Ryu's hourly rate should be reduced to that of a paralegal because she is not barred in Virginia and did not seek admission *pro hac vice* on this matter unavailing. (Dkt. 266 at 23; Dkt. 294 at 5–6).  The Court accepts Michael Ryu's representation that Sara Ryu was working on this case under his supervision and that he was the attorney ultimately making legal decisions and filing pleadings with the Court. Defendants have not cited any authority for the proposition that the Local Rules or the Virginia Rules (i.e., Part 6, § II, Rule 5.5 of the Rules of Supreme Court of Virginia) prevent an attorney properly licensed in another State from billing their time when working under the supervision of an attorney admitted to practice before this Court.  In fact, such an arrangement seems to be a common practice of many large national law firms.

[17]    Relatedly, that Plaintiffs' counsel's claimed rates, even with raises, are lower than those charged by some other attorneys or consistent with, for example, the Vienna Metro Matrix, does not *automatically* establish that Plaintiffs' counsel should receive their claimed rates and raises.  For one, "'district courts are not required to follow any particular fee matrix.'" *Lee*, No. 23-1582, at *11 n. 5 (quoting *Harwood v. Am. Airlines, Inc.*, 37 F.4th 954, 961 (4th Cir. 2022)); *see also Newport News Shipbuilding and Dry Dock Co. v. Holiday,* 591 F.3d 219, 228 (4th Cir. 2009) (a matrix is a "useful starting point to determine fees, not a required referent").  And this makes sense because a fee matrix does not necessarily capture the realities of practice for many attorneys in this District.  Indeed, the Vienna Metro Matrix was intended to reflect "complex civil litigation" and even "very competent attorney[s] in an uncomplicated dispute" may command less. *Salim v. Dahlberg*, 2016 WL 2930943, at *6 (E.D. Va. May 18, 2016) (quoting *Route Triple Seven Ltd. P'ship v. Total Hockey, Inc.*, 127 F. Supp. 3d 607, 621 n.12 (E.D. Va. 2015)).  It is no surprise then that courts in the Eastern District of Virginia, Alexandria Division, routinely consider FLSA plaintiff's attorneys' fees petitions requesting hourly rates below those in the Vienna Matrix. *See, e.g., Cho*, No. 1:18-cv-1062-LMB-IDD, at *10; *Gomez v. Seoul Gool Dae Gee Inc.*, 434 F. Supp. 3d 381, 386 (E.D. Va. Jan. 21, 2020); *see also*

raise lead counsel gave himself over the course of these cases." [18]   *Lee*, No. 23-1582, at *11 n. 4. The Court's responsibility to determine reasonable annual increases is made even more challenging because Plaintiffs' counsel failed to sufficiently identify and describe how many hours were worked in each year between 2020 and 2023, and to which legal tasks those hours were devoted.  Plaintiffs' counsel does attach a spread sheet to his Fee Petition that identifies the date of legal work performed as well as the nature of the work, the billing rate, and the person who performed the work. (See Dkt. 253-1).   However, after much effort, the Court is unable to sufficiently reconcile the information in the spreadsheet in order to reliably determine which appropriately payable claims were performed in which year, and therefore under which billable rate.

Given the sparse and somewhat muddled record made by Plaintiffs' counsel in support of his motion, the Court could simply rely on the $350 figure approved in 2019 to calculate the loadstar figure in this case.  However, the Court finds there is a simple and reliable methodology that fairly compensates Plaintiffs' counsel for the change in economic conditions and his and Ms. Ryu's professional growth from 2019 to 2023.  After careful consideration of the limited options available to the Court, the undersigned finds it appropriate to calculate the rate increase by looking to the Consumer Price Index to account for changing economic conditions.  Between 2020 and 2023, the Consumer Price Index rose a total of 18%.[19]  Therefore, the Court will increase Mr. Ryu

---

*Seo v. Northstar Prop. Mgmt. Grp., LLC*, 2022 WL 424835, at *4 (E.D. Va. Aug. 26, 2022), *R&R adopted*, 2022 WL 4242502 (E.D. Va. Sept. 14, 2022).  Thus, it might not be the case that Plaintiffs' counsel (and other wage-and-hour plaintiff's attorneys) were "grossly undercharging" for their services.

[18]      *Cf. Grissom*, 549 F. 3d at 323 (holding that plaintiff did not discharge burden where, among other defects, double-digit annual hourly rate increases "[could not] simply be attributed to economic inflation for the same time periods.").

[19]      The Consumer Price Index for All Urban Consumers was 1.2% in 2020, 4.7% in 2021, 8.0% in 2022, and 4.1% in 2023. *See* BUREAU OF LABOR STATISTICS, HISTORICAL CONSUMER PRICE INDEX FOR ALL URBAN CONSUMERS

and Ms. Ryu's 2019 hourly rates by 18% and apply that figure to hours appropriately devoted to the *Son* case between 2020 and 2023.

The Court recognizes that the 18% increase applied across all three years is linear even though the changes in the Consumer Price Index for the years in question are variable and do not follow a similar pattern. The Court also finds, however, that any modest benefit to Plaintiffs' counsel resulting from applying the 18% increase to all three years also encompasses a fair adjustment for an increase in counsels' professional skill and competence. To the extent Plaintiffs' counsel objects on the grounds that the 18% rise in billing rates does not fully capture their increase in professional competence, Plaintiffs' counsel must recognize his failure to create a fulsome record, including the lack of specific and reliable data on the *hours* billed by each attorney and staff member, *per year*, prevented the Court from calculating more granular adjustments to hourly rates. *See infra* note 32. Even though this methodology is imperfect, this adjustment is a fair, equitable, and workable means of affording Plaintiffs' counsel reasonable rate increases in light of recent economic conditions while at the same time giving them some additional credit for the development of skill and experience with the passage of time.

For these reasons, the Court finds that the reasonable rate for Mr. Ryu between 2020 and 2023 is $413 per hour ($350 approved in 2019 plus an 18% increase, which comes to an additional $63). Similarly, the Court finds that the reasonable rate for Ms. Ryu between 2020 and 2023 is $389.40 ($330 per hour plus an 18% increase which comes to an additional $59.40).

These adjusted rates are consistent with recent attorney's fees awards granted by this Court in similar FLSA cases, which bears on *Barber* factor twelve. *See, e.g.*, *Seo*, 2022 WL 4242835, at

---

(CPI-U): U.S. CITY AVERAGE, ALL ITEMS, BY MONTH, https://www.bls.gov/cpi/tables/supplemental-files/historical-cpi-u-202408.pdf (last visited Sept. 30, 2024).

*4 ($425 hourly rate was reasonable); *Hudson v. Dunn*, No. 1:23-cv-781-RDA-WBP, 2024 WL 2870845, at *10 (E.D. Va. March 15, 2024) ($350 hourly rate was reasonable); *Baust v. City of Virginia Beach*, 574 F. Supp. 3d 358, 367–68 (E.D. Va. 2021) ($430 hourly rate for counsel "highly experienced in FLSA wage and hour actions" was reasonable); *see also Gomez*, 434 F. Supp. 3d at 386 ($495 and $460 hourly rates for counsel who had "extensive experience litigating in federal courts and in employment matters," including as attorneys for major national law firms, the U.S. Department of Justice, and the Federal Trade Commission, were reasonable). Relatedly, as to factor nine (the experience, reputation, and ability of the attorney), Defendants, in their supplemental briefing, attack Michael Ryu as having questionable "billing judgment" and "not hav[ing] a good reputation . . . in this district," citing Judge Brinkema's opinion in *Cho* where she observed that Mr. Ryu made inefficient use of time. (Dkt. 266 at 22; Dkt. 294 at 3); *Cho*, 2020 WL 1056294, at *10–14. But here, as in *Cho*, these considerations will be captured in the reasonable hour analysis, discussed below, and do not warrant a reduction in hourly rate. *Cho*, 2020 WL 1056294, at *10.

Plaintiffs' counsel also requests an hourly rate of $180 per hour for their paralegal, Cathy Kim.[20] Defendants' objection based on the fact that Ms. Kim's rates rose from $80 to $180 per hour "[d]uring the course of this litigation" (Dkt. 266 at 23) appears to be slightly off the mark, as a review of the record and Plaintiffs' own statement (Dkt. 253 at 20) reveals that Ms. Kim consistently billed at a rate of $180 per hour in this case. However, Ms. Kim's hourly rate was $80 as recently as 2019. *See Cho*, 2020 WL1056294, at *10. In support of this $100 per hour increase from 2019 to 2020, Plaintiffs' counsel points out that Ms. Kim has worked for him since

---

[20]     Plaintiff also requests payment for Heejung Yang, but it is unclear what position this person holds, and they do not appear on any of Plaintiff's billing records. Accordingly, the Court assumes that all paralegal tasks were performed Cathy Kim.

2012, is fluent in Korean and English, and holds a bachelor's degree in business from George Mason University (Dkt. 273 at 289), and that her billable rate is still at the low end of the *Laffey* (and *Vienna*) matrices (Dkt. 253 at 19; Dkt. 273 at 28–29).  The Court does not find Defendant's suggestion that Ms. Kim's rate should be reduced due to her "apparent absence of any legal credentials," but the Court does find that Plaintiffs have failed to justify the large increase in Ms. Kim's rates in a relatively short period of time.  Thus, a similar 18% increase will be applied to Ms. Kim's 2019 rate, which brings it to $94.40 per hour ($80 per hour plus an 18% increase which comes to an additional $14.40).  This adjusted rate is consistent with the observation that a rate of "[l]ess than $150 [per hour] is common for paralegals." *United States v. Leebcor Services, LLC*, 2022 WL 3337793, at *6 n.9 (E.D. Va. April 1, 2022) (citing *Baust v. City of Va. Beach*, 574 F. Supp. 3d 358, 367 n.3 (E.D. Va. Dec. 8, 2021) (FLSA action: $100); *Gomez*, 434 F. Supp. 3d at 386 (FLSA action: $135)).  In addition, the Court has reviewed the nature of the work performed by Ms. Kim as described in Exhibit A to Plaintiffs' Fee Petition (Dkt. 253-1) and finds the adjusted rate of $94.40 per hour to be reasonable given the straightforward nature of the work performed.

**b. *Reasonable Hours***

Next, to establish the lodestar figure at step one, the Court must determine the hours that were "reasonably expended" by counsel and their staff. *McNeil*, 2017 WL 9771834, at *7 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  The reasonable hour figure should exclude hours that are "excessive, redundant, or otherwise unnecessary." *Id*. (quoting *Hensley*, 461 U.S. at 434).  Plaintiff must also provide "evidence 'supporting the hours worked' and the exercise of 'billing judgment' that establishes that the hours expended were reasonable." *Id*. (quoting *Hyatt v. Barnhart*, 315 F. 3d 239, 253 (4th Cir. 2002)).[21]

---

[21]      This part of the lodestar determination is distinct from step two of the attorneys' fees analysis (adjustment

In his Fee Petition, Plaintiffs' counsel identifies the number of hours spent on each task by himself, Ms. Ryu and their paralegal.[22] (Dkt. 253 at 5-16). Specifically, Mr. Ryu requests payment for 1,345.65 hours for himself, 55.5 hours for Ms. Ryu, and 276.2 hours for their paralegal, Ms. Kim. *Id.*[23] In support of this request, Mr. Ryu attached a 257-page (single spaced) spreadsheet that describes the legal work, identifies the individual plaintiff, the date or date range of the work, the length of time devoted to each task, the rate charged and the person who performed the work. (Dkt. 253-1). Mr. Ryu also certified that this information was contemporaneously entered into the law firm's software program designed to track billing. (Dkt. 253-1 at 1). Defendants raise several objections to Plaintiffs' claimed hours in this case.

 i. *Block-Billing*

Defendants assert that Plaintiffs' counsels' time entries are "riddled with block-billing." (Dkt. 266 at 12–14). "Block billing" refers to the disfavored "practice of grouping, or lumping, [of] several tasks under a single entry, without specifying the amount of time spent on each particular task." *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006) (internal quotation marks omitted). "Lumping and other types of inadequate documentation are thus a proper basis

---

for unrelated, unsuccessful claims). *See, e.g.*, *McNeil*, 2017 WL 9771834 at *7–10; *Cho*, 2020 WL 1056294 at *5, 9. The parties, however, have generally bundled together their arguments on these separate issues. The Court has endeavored to identify the thrust of each argument and consider the merits of each argument in the appropriate step.

[22] As discussed below, Plaintiffs' counsel also seeks payment for five hours of legal research performed by a contract attorney, Manny Ignacio, Esq.

[23] The Court reached this number of hours by adding together the hours requested as set forth in the "Summary of Procedural history and Billing" in Plaintiffs' Fee Petition. (Dkt. 253).

 The Court notes that paragraph 36 of the Fee Petition fails to identify any hours worked in support of Plaintiff's response to a motion to dismiss. Nevertheless, Plaintiffs' counsel requests payment in the amount of $2,034 for work performed defending this motion. The Court assumes that the failure to state the hours worked was an oversight. After careful review of Plaintiffs' billing ledger attached as Exhibit A to the Fee Petition, the Court added 5 hours to account for legal work performed on this motion. The Court finds that 5 hours is reasonable given the straightforward nature of the motion and the fact that the issues addressed overlapped with work previously performed on this case.

for reducing a fee award because they prevent an accurate determination of the reasonableness of the time expended in a case." *Id.* "Such a reduction can be accomplished in one of two ways: (i) by identifying and disallowing specific hours that are not adequately documented, or (ii) by reducing the overall fee award by a fixed percentage or amount based on the trial court's familiarity with the case, its complexity, and the counsel involved." *Id*.

Even taking Plaintiffs' point that block-billing does not necessarily occur when the grouped tasks are closely related and "not necessarily separable activities" such that a single entry can describe with adequate specificity what counsel's time was expended on,[24] the Court finds that Plaintiffs' counsels' billing records contain several instances of block-billing.  These include, but are by no means limited to,[25] 8 hours for "prep deposition including reviewing and analyzing late produced document" (Dkt 253-1 at item # 483); 4.2 hours for "analysis of documents produced; analysis of fact; preparation of litigation steps" (Dkt. 253-1 at item # 1401); 3.1 hours for "litigation strategy; preparation of deposition – deponent selection, scheduling, notices; communications with the opposing counsels – emails review and responses" (Dkt. 253-1 at item # 1412); 4.1 hours for "deposition scheduling; review proposed depositions; contact clients' to figure out time; draft response to proposed schedule; notice of depositions; discussion regarding discovery extension; (Dkt. 253-1 at item # 1428); 3 hours for "trial preparation – review scheduling orders, plan, strategy, arguments" (Dkt. 253-1 at item # 1757), 5.9 hours for "[] litigation strategy; review facts; conferences with clients" (Dkt. 253-1 at item # 1562); 0.9 hours for "attention to the scheduling of the depositions, emails with the opposign [sic] counsel, conference with clients, interpreter

---

[24]    (Dkt. 273 at 19–21 (citing *Larsen v. AR Resources, Inc.*, 453 F. Supp. 3d 849, 853 (E.D. Va. 2020)). There must, of course, be a logical limit to this principle, and that limit has been exceeded here.

[25]    The Court has reviewed all of Plaintiffs' time entries, but given that there are more than 1900 items, it is not feasible, nor would it be conducive to the current analysis, for the Court to work through deficiencies line-by-line here. *See McNeil*, 2017 WL 9771834, at *8 ("The Court cannot exclude individual items with such specificity . . . plaintiffs have billed too many [deficient] tasks for the Court to treat on an individual basis").

arrangement, NOD and court reporter instruction" (Dkt. 253-1 at item # 395), and 1.4 hours for "prep for hearing tomorrow; contact court to find out zoom or in person; chambers' copies ready and courier to the court; review issues." (Dkt. 253-1 at item # 651).

The tasks described here are not so bound up with one another such that there is no need to probe whether the time spent on each constituent is reasonable. Thus, Plaintiffs' counsels' repeated use of block billing leaves the Court to "hypothesize whether [] this time is excessive given the descriptions." *Lee Supinger v. Virginia*, 2019 WL 1461071, at *3 (W.D. Va. April 2, 2019). However, given the specific nature of the tasks at issue and the role they played in the overall litigation, the Court finds that only a modest reduction in the hours requested is warranted. Accordingly, the Court will reduce Mr. Ryu's request by 10 hours.[26]

### ii.    *Vague and Inadequate Time Entries*

Relatedly, Defendants argue that Plaintiffs' time entries are "vague and inadequate." (Dkt. 266 at 14–16). Billing records that are "inappropriately vague" and fail to "identify the nature of the work performed" again significantly frustrate the Court's review and also justify the reduction of a fee award. *See Crump v. United States Dept. of Navy by & through Mabus*, 245 F. Supp. 3d 692, 709 (E.D. Va. 2017); *LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 600 (E.D. Va. 2016); *McNeil*, 2017 WL 9771834, at *9; *Cho*, 2020 WL 1056294, at *13; *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F. 3d 169, 180 (4th Cir. 1994) ("We have frequently exhorted counsel to describe specifically the tasks performed").

The Court agrees there are a number of vague descriptions in Plaintiffs' counsels' billing records. These include dozens of entries with either the description "conference with client" or some thin variation thereof, such as "conference with client re case" and "conference with client

---

[26] In order to avoid double counting, this amount reflects voluntary reductions by Mr. Ryu incorporated in his original request as well as other reductions imposed by the Court that overlap with this issue.

re facts." (*See generally* Dkt. 253-1). These vague descriptions stand out because there are other more specific notations regarding client meetings, such as "conference with client re discovery", "conference with client re subpoena to Walles," and "conference with client re Ham's deposition". (*Id.*). There are also several ambiguous references to "litigation planning," "evaluation of situation," "litigation strategy," "prep for X," and the like. (*See, e.g.*, Dkt. 253-1 at item # 1186 (3.6 hours for "litigation planning"); item # 1705 (1.5 hours for "evaluation of situation; litigation planning"); item # 626, 627 (0.3 and 1.8 hours for "litigation strategy"); item # 1213 (2 hours for "analysis of case"); item # 1073 (4 hours for "litigation strategy including legal reasoning and factual investigation"); item # 473 (2.1 hours for "prep for deposition"); item # 1734, 1888 (2 and 7.4 hours for "prep trial" and "client trial prep"); item # 1747 (6.3 hours for "prep for settlement conference"); item # 697 (1.4 hours for "fluctuating regular rate"); item # 1561 (3.7 hours for "review and analysis of documents produced by Defendants"); *see generally* Dkt. 253-1).

In addition, Defendants cite four entries for legal research that they argue "do not provide adequate detail to allow the Court to evaluate their appropriateness." (Dkt. 266 at 16) ("legal research in preparation of deposition," "draft motion, legal research," "legal research on XXXX for sj," "research XXXX"). The Court agrees that these entry descriptions are inadequate.

While Plaintiffs' counsel suggests that their records are not vague because there is no need to include "the description of routinely conducted subtasks for the main tasks," Plaintiffs' counsel has clearly taken this principle too far. (Dkt. 273 at 23–24). The Court does not agree that what exactly Plaintiffs' counsel was doing for many hours, or the reasonableness of such, is somehow obvious from the descriptions provided. Plaintiffs' counsel should know as much, given that Judge Brinkema previously cited his substantially similar "vague and sometimes unintelligible entries" as one basis for reducing the lodestar figure in *Cho*. 2020 WL 1056294, at *13–14 (citing "organize

case documents," "PDF and send to opposing counsel," "wrapping up of janice cho deposition," "trial strategy", "litigation planning and strategy," "attention to joint discovery plan," and "supp 9th" as deficient descriptors).  Moreover, to the extent that Plaintiffs' counsel suggests that they cannot provide greater detail owing to duties of confidentiality stemming from attorney-client privilege and the settlement agreements (Dkt. 253 at 23–24), the granularity necessary for the Court to discern the reasonableness of the fee request and any excess or redundancy in hours falls far short of transgressing counsels' obligations. *See Perez-Sosa v. Garland*, 22 F. 4th 312, 330 (1st Cir. 2022) ("an attorney's duty to protect confidential client communications . . . does not run at cross-purposes with the attorneys' obligation to keep sufficiently transparent time records").  Although Plaintiffs' counsel's billing records are not a model of clarity and to a degree frustrate the Court's review, by examining the docket as a whole and the filings of the parties throughout this case, the Court is able to reliably determine which vague entries mask an inefficient use of counsels' time and which imprecise entries are simply poor recordkeeping.  After careful review, the Court is confident that the vague entries by counsel require only a modest reduction in the hours requested.  Accordingly, the Court will reduce Mr. Ryu's request by 8 hours.[27]

### iii.    Billing for Unnecessary Work

Defendants challenge Plaintiffs' counsels' time entries as billing for unnecessary work. (Dkt. 253 at 15–17).  Defendants argue that Plaintiffs' counsel should not be able to recover for "over $3000 across 6+ hours of legal research related to whether or not punitive damages are available in an FLSA retaliation claim (they are not)." (*Id*. (citing Dkt. 253-1 at item # 994, 1638).  Defendants essentially argue that the law is clear and additional research on this point was unnecessary.  Plaintiffs respond that "in most of the federal districts, punitive damages are awarded

---

[27]    In order to avoid double counting, this amount reflects voluntary reductions by Mr. Ryu incorporated in his original request as well as other reductions imposed by the Court that overlap with this issue.

for FLSA retaliation [claims].  Further the Fourth Circuit has not [directly addressed the issue].

The [district court] decisions . . .  are only the law of the case being [litigated]." (Dkt. 273 at 26).

Plaintiffs are correct that the Fourth Circuit has not decided specifically whether punitive damages

are available for FLSA retaliation claims.  Judge Brinkema previously held in *Cho* that they are

not, as did Judge Ellis twenty years prior. *Cho*, 2020 WL 1056294, at *5 (collecting cases); *Lanza*

*v. Sugarland Run Homowners Ass'n, Inc.*, 97 F. Supp. 2d 737, 42 (E.D. Va. 2000).  And Judge

Giles in this case ultimately ruled again that punitive damages were not available. (Dkt. 232 at 4).

However, given the importance of the question to Plaintiffs' case and the fact that Fourth Circuit

has not yet ruled on the issue, conducting additional research is an appropriate exercise of

professional judgment and the 6.4 hours expended appear reasonable.[28]  The Court, therefore,

disagrees with the Defendants' position that this work was unnecessary.  The Court will, however,

consider this issue below at step two of the attorneys' fees analysis when determining any

appropriate adjustment for unrelated and unsuccessful claims.

### iv.    Billing for Clerical Work

Defendants assert that Plaintiffs inappropriately billed attorney rates for approximately 15

hours of clerical work, citing various examples of Michael Ryu performing "calendaring,"

"arranging," and "filing." (Dkt. 266 at 17–18). "Purely clerical activities, regardless of who

performs them, are considered overhead and are not compensable as . . .  attorney fees." *McNeil*,

2017 WL 9771834, at *8 (internal quotation marks omitted) (quoting *Abusamhadaneh v. Taylor*,

2013 WL 193778, at *38 (E.D. Va. Jan. 17, 2013).  A review of the record confirms a moderate

---

[28]     However, the Court recognizes that Plaintiffs' research and subsequent briefing did not result in significantly new or better arguments.  Plaintiffs introduced one new case suggesting that a district court should allow the jury to make findings on punitive damages to avoid a remand in case the circuit above decided that punitive damages were in fact available under an FLSA retaliation claim. (Dkt. 206 at 13–16 (citing *West v. City of Holly Springs, Miss.*, 2019 WL 2454066, at *3 (N.D. Miss. June 12, 2019))).

number of clerical tasks performed by Mr. Ryu on this front. (*See, e.g.*, Dkt. 253 at item # 453 (0.3 hours for "arrange the redepositions"), item # 886 (0.2 hours for "arrange conference call on Monday"), item # 1710 (0.3 hours for "check calendars, scheduling including communications to opposing counsel"), item # 1058 (0.5 hours for "prep chamber's copy"); item # 170, 174 (0.1 and 0.1 hours for "calendaring" and "calendaring for discovery"), item # 538 (0.1 hours for "attention to filing of motions"). Plaintiffs' counsels' explanation that some calendaring, arranging, and filing on the part of the attorney is required as a matter of good practice for purposes of liability insurance (Dkt. 273 at 25–26) is insufficient. The Court also does not accept, Plaintiffs' counsels' suggestion that while these tasks total about 15 hours or so, "[a] lot of the [individual] entr[ies] [are] for 0.1." (Dkt. 273 at 26). The Court recognizes the practical challenges of operating a two-attorney law firm, however that does not change the fact that legal rates may be charged only for legal work. After reviewing each entry reflecting a clerical task in the context of the work performed, the Court will reduce Mr. Ryu's request by 6 hours

> ### v.     *Billing for Duplicative Work*

Defendants attack Plaintiffs' submission as "bill[ing] for redundant work," citing specifically "49 redundant time entries . . . across 35.6 hours totaling $6,423 for redundant tasks related to 'wage calculation' and 'calculate hourly rate.'" (Dkt. 266 at 18). Defendants concede that most of this time was attributed to Plaintiffs' counsels' paralegal but argue that the task nevertheless does not require 35.6 hours and should not take place over the course of two years. (*Id.*). Here, the Court accepts Plaintiffs' argument that the requested hours are justified by the continuing substantive and procedural complexities surrounding the calculation of wages and damages in this case. (Dkt. 273 at 27). Accordingly, the Court will not reduce Mr. Ryu's request for this reason.

24

       *vi.*     *Legal Research Performed by Manny Ignacio, Esq.*

Defendants also contest five hours of "legal research on retaliation" performed by "Manny Ignacio, Esq." at $420 per hour as undetailed and inappropriate considering Plaintiffs' counsels' claimed FLSA experience.  (Dkt. 266 at 17).   Defendants' also point out that Plaintiffs' counsel failed to provide Mr. Ignacio's credentials to justify his hourly rate.  (*Id*.)  In reply to Defendants' opposition, Plaintiffs' counsel stated that Mr. Ignacio is an experienced employment law attorney who was hired to research the uncommon issue of filing an FLSA retaliation complaint against an employer's attorney.[29]  (Dkt. 273 at 25–26; Dkt. 271-6).   Plaintiffs' counsel also provided Mr. Ignacio's resume (Dkt. 273–7) and time entries provided by Mr. Ignacio to Plaintiffs' counsel.  *Id*.

First, as to the reasonableness of Mr. Ignacio's rate, the Court has reviewed Mr. Ignacio's resume which reflects considerable experience in the field of employment law developed over his 15-year legal career.  The Court finds that Mr. Ignacio's experience and role within Plaintiffs' legal team is comparable to that of Ms. Ryu and will therefore reduce Mr. Ignacio's requested hourly rate $420 to $389.40, the rate the Court found reasonable for Ms. Ryu.  Second, as to reasonableness of the hours expended, the Court finds that five hours is reasonable given the nature of counsel's research project.  For these reasons, the Court will include Mr. Ignacio's five hours of legal research at a rate of $389.40 per hour in calculating the lodestar figure in step one.  However, the principal issue researched by Mr. Ignacio – whether Defendants' attorney could be included in an FLSA retaliation claim – was rejected by the District Judge (Dkt. 217) and, therefore, the Court will make the necessary reduction at step two of the attorneys' fees analysis for unsuccessful claims.

---

[29]     Plaintiffs did include Defendants' counsel, Mr. Victory, in its retaliation claim.  As noted below, that part of the retaliation claim was dismissed by the District Judge. (*See* Dkt. 217).

*vii.*   *Billing for Time Spent Calculating Counsel's Fee Petition*

Lastly, the Court finds Plaintiffs' counsel's request for fees arising from 53.8 hours of Michael Ryu's time, 2.1 hours of Sara Ryu's time, and 2.6 hours of Cathy Kim's time spent calculating and preparing their fee petition, to be excessive, thinly justified, and emblematic of many of the issues previously discussed. (Dkt. 253 at 15).  The ten entries corresponding to this request bear descriptions such as "fee calculations," "fee petition," "expense check," "review and revise fee petition," and the like.  (Dkt. 253-1 at item # 1908–1917).  These descriptions are facially vague and often block billed when, for example, Michael Ryu records three entries of 9.5, 11.9, and 18.9 hours across three days simply for "fee petition." (Dkt. 253-1 at item # 1913, 1915, 1916).  The total amount of time claimed is plainly disproportionate to the needs of the motion, especially considering that calculations and drafting of the fee petition should have been relatively straightforward if counsel had already been keeping fulsome records, as nearly all attorneys in private practice are obligated to do.[30]  Moreover, for all their efforts, Plaintiffs' fee petition is by no means a model of clarity and fails to provide basic data to assist in evaluating the petition, forcing the Court to attempt to reconstruct many of Plaintiffs' calculations and arguments across 257 pages of time records.[31]  The Court will thus reduce Mr. Ryu's request from 53.8 hours to 10 hours (a reduction of 43.8 hours), Ms. Ryu's request from 2.1 hours to 1 hour (a reduction of 1.1 hours), and Ms. Kim's request from 2.6 hours to 1 hour (a reduction of 1.6 hours).

---

[30]   It is worth pointing out that while Plaintiffs' counsel has at various times argued that the total time (and fees) they have expended on various tasks is reasonable when divided by the number of plaintiffs in the consolidated action (*see, e.g.* Dkt. 273 at 27), Plaintiffs' counsel should have realized significant savings by virtue of having to prepare only one consolidated fee petition and not ten separate ones in this case.

[31]   Despite the petition's length, Plaintiffs' counsel fail to provide summary data, such as a "breakdown of the total number of hours spent by each [biller]" and an "explanation [of] the total amount of fees attributable to each individual." *Cho*, 2020 WL 1056294 at *14 n.11. While counsel have provided a "Summary of Procedural History and Billing" in addition to "a list of time entries and calculat[ing] the amount of fees [they] claim," their calculations are not easily verifiable and their failure to provide year-level information, despite claiming numerous annual rate increases for each biller, still "ma[kes] the typical method of calculating the lodestar extremely difficult." *Id*.

26

### c. *Additional Unnecessary Hours and Unsuccessful Efforts*

Following the same principles barring "recovery for unsuccessful efforts," Defendants also assert that Plaintiffs' counsel cannot recover fees related to a variety of other unsuccessful motions and oppositions. (Dkt. 266 at 10–12).  Having reviewed the parties' briefing, Plaintiffs' counsels' time records, and the relevant docket filings, the Court finds that Plaintiffs' unsuccessful efforts are inextricably intertwined with a pattern of over litigation, inefficient use of professional time and poor record keeping.  With respect to the specific objections lodged by Defendants, the Court makes the following findings:

- (Dkt 266 at 10) "3/5/2021 – 4/5/2021, 8.5 hours in entries related to modifying discovery schedule" and "3/26/2021 – 4/15/2021, 4.8 hours and $1,764 in entries related to motions to compel": The Court granted (Dkt. 53) Plaintiffs' March 5, 2021 motion to extend (Dkt. 19) (albeit for a shorter time period than requested). (Dkt. 253 at 6). The Court denied (Dkt. 58) the second and third motions to extend (Dkts. 24, 32) but granted the motion to compel (Dkt. 58).  As a result, the Court will reduce Mr. Ryu's request by 5 hours.  The Court finds that 5 hours is reasonable given the nature of motions and Mr. Ryu's time entries are too vague and disorganized to justify any additional hours.  Accordingly, the Court will reduce Mr. Ryu's hourly total request of 13.3 hours by 8.3 hours.

- "4/8/2021 – 4/13/2021, 7 hours and $1,218 in entries related to motion to consolidate – Plaintiffs' Motion to Consolidate denied in part by the Court"; "4/30/2021 – 6/21/2021, 13.9 hours $6,462 in entries related to opposition to Defendants' Motion for Qualified Protective Order Governing Disclosure of Relevant Patient Health Records – Motion Granted by Court" (Dkt. 104); "5/17/2021 – 6/7/2021, 6.9 hours and $2,898 in entries related to Plaintiffs' motion for definitive statement – denied by the Court" (Dkt. 92); "6/29/2021 – 7/6/2021, 3.4 hours and $1,872 in entries related to objecting to Magistrate Judge's Protective Order – Denied" (Dkt. 112): A review of Plaintiffs' counsels' entries confirms that they are not seeking to recover for entries related to these failed efforts. Defendants may have misunderstood Plaintiffs' somewhat confusing "Procedural History Paragraph" labeling system as many of the objected-to entries are attributed to other matters. Defendants' objections on these points are overruled.

- (Dkt. 266 at 11) "9/28/2021 – 10/15/2021, 22.1 hours and $8,898 in entries relating to drafting subpoenas and opposing Defendants' Motion to Quash Plaintiffs' Subpoena Duces Tecum (ECF 126) – Defendants' Motion Granted by the Court" (Dkt. 142): A review of Plaintiffs' counsels' entries confirms that they are not seeking to recover for entries related to these failed efforts and it appears Defendants may have again

misunderstood Plaintiffs' labeling system. The Court accepts Plaintiffs' counsel's representation that these entries were not included in their calculations. (Dkt. 273 at 17, 30). Defendant's objection on this point is overruled.

- (Dkt. 266 at 11) "10/8/2021 – 10/15/2021, 10 hours and $5,058 in entries relating to opposing Defendants' Motion to Compel and for Sanctions (ECF 135) – Defendants' Motion Granted in part by the Court (ECF 142)": Plaintiffs' counsel asserts that they are seeking 50% of the 10 hours they actually attribute to this Motion (Dkt. 273 at 17). Given the nature of this motion and the quality and quantity of work performed, 5 hours is a reasonable request.  Defendant's objection on this point is overruled.

- (Dkt. 266 at 11–12) "12/3/2021 – 12/6/2021, 3.8 hours relating to motion for extension of time (ECF 162) – Denied by the Court (ECF 165)": Again, a review of Plaintiffs' counsels' entries confirms that they are not seeking to recover for entries related to these failed efforts and it appears Defendants may have again misunderstood Plaintiffs' labeling system.  Defendant's objection on this point is overruled.

- (Dkt. 266 at 12) "7/21/2022 – 8/1/2022, 5.2 hours …relating to motion for continuance (ECF 236) – Denied by the Court (ECF 241)": Once again, a review of Plaintiffs' counsels' entries confirms that they are not seeking to recover for entries related to these failed efforts and it appears Defendants may have again misunderstood Plaintiffs' labeling system. Defendant's objection on this point is overruled.

### d.  The Remaining Barber Factors

As discussed below, the *Barber* factors most relevant to this case have already been subsumed into the Court's lodestar analysis, and the remaining *Barber* factors do not warrant additional adjustments.

#### i.    The time and labor expended

This factor was fully considered in the reasonable rate and hour analyses and no further adjustments are warranted on these grounds.

#### ii.    The novelty and difficulty of the questions raised

The questions raised in this case were neither particularly novel nor difficult.  At its core, this case involved garden-variety FLSA overtime claims.  There were also FLSA retaliation claims, which Plaintiffs argue implicate open legal questions with respect to "the scope of the employer and the availability of punitive damages." (Dkt. 253 at 17).  But Plaintiffs had little new

to say on the subject and their brief essentially repackaged the same legal arguments previously rejected by District Judges in this Court. (Dkt. 206). Plaintiffs also seem to suggest that the fact that this case "involve[d] extensive factual disputes" unique to each plaintiff, particularly with respect to the FLSA retaliation claims, requires some additional consideration. (*Id.*) The record, in fact, suggests the opposite, that there were many issues common to each Plaintiff which should have streamlined the prosecution of this case. No further adjustments are warranted on these grounds.

> ### iii.   The skill required to properly perform the legal services rendered

This factor was fully considered in the reasonable rate and hour analyses and no further adjustments are warranted on this basis.

> ### iv.   The attorney's opportunity costs in pressing the instant litigation

Plaintiffs' counsel argues that the "opportunity cost of litigating this case was extremely high," noting that it was taken on contingency and has spanned two years and $39,000 in costs. (Dkt. 253 at 18). But concerns over uncertainty of payment and advancement of costs are "typically encountered in wage and hour claims" and are not so unusual as to justify an increased award. *Matias Guerra v. Teixeira*, 2019 WL 3927323, at *7 (D. Md. Aug. 20, 2019). Moreover, as in *Cho*, Plaintiffs' counsel does not identify any opportunities lost or cases declined due to his involvement in this lawsuit. *Cho*, 2020 WL 1056294 at *16. No further adjustments are warranted on these grounds.

> ### v.   The customary fee for like work

This factor was fully considered in the reasonable rate and hour analyses and no further adjustments are warranted on these grounds.

vi.    *The attorney's expectations at the outset of the litigation*

Plaintiffs' counsel acknowledge that he took this case on contingency (Dkt. 253 at 18) and was fully aware of the possibility of recovering no compensation for his and his colleagues' work in this matter, as is typical of plaintiff-side wage and hour representation. Moreover, given counsel's experience in this practice area and as he acknowledges, counsel was also fully aware of the likelihood that their compensation could ultimately be decided by a Court applying a reasonableness standard (*Id.*; Dkt. 291 at 1). No further adjustments are warranted on these grounds.

vii.    *The time limitations imposed by the client or circumstances*

Plaintiffs' counsel acknowledge that Plaintiffs did not impose any specific time limitations in this matter.  Plaintiffs' counsel notes that this case "require[d] a lot of time commitment," (Dkt. 253 at 18) but this consideration has been captured in the reasonable hour analysis and no further adjustments are warranted on these grounds.

viii.    *The amount in controversy and results obtained*

On this point, Plaintiffs' counsel submits that the "amount in controversy was huge, and the result obtained is very substantial on its own as well as compared to the amount in controversy." (*Id.*)  However, Defendants point out that most of the Plaintiffs received less than 50% of the damages they alleged in their Complaints. (Dkt. 266 at 4).  Relatedly, the Court also observes that the final award of legal fees of $353,397.43 (discussed below), when divided by 10, results in a fee award of $35,339.74 per plaintiff.  This amount exceeds the recovery of 8 of the 10 plaintiffs in the *Son* case.  Nevertheless, "disparities of this sort are typical in FLSA cases" and no adjustment on this basis is appropriate at this step of the analysis.[32]  *Cho*, 2020 WL 1056294 at *17 (citing

---

[32]    The Court is required to apply all of the *Barber* factors at step 1 of the fees analysis, but the eighth overlaps

*Gomez*, 434 F. Supp. 3d at 383, 387); *LaFleur*, 189 F. Supp. 3d at 601 ("fee awards need not be proportionate to the results obtained by a plaintiff").

> ix.    *The experience, reputation, and ability of the attorney*

This factor was fully considered in the reasonable rate and hour analyses and no further adjustments are warranted on these grounds.

> x.    *The undesirability of the case within the legal community in which the suit arose*

On this point, Plaintiffs' counsel states that they are "honored to represent the plaintiffs." (Dkt. 253 at 19). At various times, Plaintiffs' counsel has emphasized the deterrent and incentivization purposes of the FLSA and its fee-shifting provisions. (*See, e.g.*, Dkt. 253 at 20–21; Dkt. 273 at 9); *see also Fernandez v. Kinray, Inc.*, 2014 U.S. Dist. LEXIS 17954, at *30–31 (E.D.N.Y. Feb. 5, 2014) ("The attorney's fee provision encourages employees to bring claims, and the retaliation provision protects employees once they do. The policy considerations that led Congress to enact the FLSA are implicated when plaintiffs assert claims, not only when plaintiffs are found to have meritorious claims.").  It is also true that "cases with individual wage and hour claims are generally less desirable to attorneys as the potential recoverable amount is likely much smaller than a class action" and that "[c]ases taken on contingency, although a common practice, are even less desirable as there is no guarantee of payment or reimbursement of expenses." *Matias Guerra*, 2019 WL 3927323, at *7.  While these considerations are perhaps not as prominent when a case is settled, they are relevant nonetheless, and the Court has considered them to an appropriate degree in the lodestar analysis.  No further adjustments are warranted on these grounds.

---

to a degree with step three of the analysis, at which the Court is required to "award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F. 3d at 81, 88. Thus, there is a risk of unwarranted double-adjustments. "With this concern in mind . . . [the Court] will follow the direction of the Fourth Circuit and apply all the [*Barber*] factors when assessing the lodestar amount. However, the ultimate impact of the degree of success in this case will be considered in step three." *Matias Guerra*, 2019 WL 3927323, at *7; *Cho*, 2020 WL 1056294 at *17 n.14.

xi.   *The nature and length of the professional relationship between attorney and client*

Plaintiffs' counsel states that this case is the "first time [they] have worked for *most* of the plaintiffs." (Dkt. 253 at 19). While this suggests that Plaintiffs' counsel has represented some of their clients previously, "[n]o facts have been presented . . . that the nature of any prior relationship between the attorneys and the client[s] had any particular impact on the appropriate billing rates." *Garcia v. Montgomery Cnty., Maryland*, 2018 WL 1441189, at *8 (D. Md. Mar. 22, 2018); *Cho*, 2020 WL 1056294 at *18.  To the extent that this case required Korean cultural and language competence on the part of Plaintiffs' counsel, these considerations have been accounted for in the reasonable rate and hour analysis.  Thus, no further adjustments are warranted on these grounds.

xii.   *Attorneys' fees awards in similar cases*

This factor has been fully considered in the reasonable rate and hour analysis, and no further adjustments are warranted on these grounds.

**e.  Lodestar Amount**

Based on the findings above, the Court finds the lodestar amount at step one to be $571,276.75.[33]

**Step 2: Reducing Fees for Hours Spent on
Unsuccessful Claims Unrelated to Successful Ones**

"After determining the lodestar figure, the court should then subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Robinson*, 560 F. 3d at 244 (internal

---

[33]     The lodestar figure was calculated by multiplying Michael Ryu's reasonable hourly rate of $413 by 1,269.55 hours reasonably expended in litigating the *Son* case, which equaled $524,324.15.  The Court then multiplied Sara Ryu's hourly rate of $389.40 by 54.4 hours expended, which equaled $21,183.36.  Next, the Court multiplied Ms. Kim's hourly rate of $94.40 by 274.6 hours expended, which equaled $25,922.24.  Adding these figures together totaled $571,429.75.  Finally, the Court reduced this amount by $153.00, which constitutes the difference in fees between the $420 rate requested for Mr. Ignacio's five hours of research and the $389.40 rate awarded by the Court. This results in the lodestar amount of $571,276.75.

quotation marks omitted).  "The Fourth Circuit has explained that claims are 'related' if the claims arose from a 'common core of facts' and are 'impossible to isolate' from the successful ones." *Larsen*, 453 F. Supp. 3d at 855 (citing *Abshire v. Walls*, 830 F. 2d 1277, 1283 (4th Cir. 1987)); *Cho*, 2020 WL 1056294 at *19 (quoting *Hensley*, 461 U.S. at 434) ("A claim is unrelated if it is based on different facts and legal theories").  In performing this analysis, the Court will refrain from "viewing such a case as a series of discrete claims" and will instead "'focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended in the litigation.'"[34] *McNeil*, 2017 WL 9771834, at *10 (quoting *Hensley*, 461 U.S. at 435).

In this case, Defendants argue that the Court should reject "Plaintiffs' attempts to recover over $140,000 in attorneys' fees related to unsuccessful claims and motions," including (1) a summary judgment motion which was denied in its entirety, and (2) retaliation claims which were meritless and wholly unsuccessful.  (Dkt. 266 at 8).

### a.  *"Unsuccessful" Motion for Summary Judgment*

Defendants first attack Plaintiffs' "attempt to recover … 72.8 hours related to their summary judgment motion, which the Court denied in its entirety." (Dkt. 266 at 9).[35]  The reasonable hours inquiry does not permit Plaintiffs to "recover for unsuccessful efforts," and this includes for failed motions, such as for summary judgment.  *Salim*, 2016 WL 2930943, at *10; *see also Brundle on behalf of Constellis Emp. Stock Ownership Plan v. Wilmington Trust, NA*, 258 F. Supp. 3d 647, 666–67 (E.D. Va. 2017); *Bd. of Trustees Sheet Metal Workers' Nat'l Pension Fund*

---

[34]    *See also Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In this circumstance the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.").

[35]    The Court's analysis of step two incorporates the reduction of the hourly rate as determined in step one.

*v. Four-c-aire, Inc.*, 2021 WL 837341, at *6 (E.D. Va. Feb. 3, 2021).

Plaintiffs' counsel concedes this point to some degree, given that they claim only 50% of the fees and costs (approximately 36.4 hours amounting to $14,606.66 in fees and $100.17 in costs) they attribute to legal work performed on their summary judgment motion. (Dkt. 253 at 13, 16; Dkt. 273 at 13).   Plaintiffs claim that a 50% recovery is warranted because the settlement discussions were conducted "factoring [in] the rates and period set forth in the plaintiffs' motion" and Plaintiffs' had a meritorious argument regarding the tolling of the statute of limitations.  (Dkt. 253 at 16; Dkt. 273 at 13). However, Plaintiffs' summary judgment motions were indeed denied in their entirety.  Plaintiffs' summary judgment motions were poorly constructed legal arguments that were often predicated on material facts clearly in dispute.  Plaintiffs also used these motions to challenge well-settled principles of law to no avail.   These motions were not sufficiently grounded in law or fact and produced no benefit to Plaintiffs.  Finally, the Court finds that there is no basis in the record to find that the summary judgment motion played any meaningful role in the resolution of this case.  Accordingly, the Court will reduce Mr. Ryu's request by an additional 36.4 hours.

### b.  *Plaintiffs Retaliation Claims*

The Court now turns to Defendants' challenge to Plaintiffs' request for attorneys' fees related to "meritless retaliation claims" that Plaintiffs "did not prevail on," "failed to articulate any recoverable damages for," and on which the matter of punitive damages was rejected by the Court. (Dkt. 266 at 9–10).

As a threshold matter, the Court finds that the retaliation claims are related to the underlying wage dispute because the prosecution of the retaliation claims depended on the prosecution of the overtime claim and the same "common core of facts." *See Cho*, 2020 WL

1056294 at *20 (declining to excludes all fees and costs related to retaliation claims because "[counsels'] work on the [retaliation claims] was closely related to [Plaitniff's] FLSA [overtime] claim"); *see also Andrade v. Aerotek, Inc.*, 852 F. Supp. 2d 637, 642 (D. Md. 2012) ("*Hensley* instructed courts to subtract . . . when [unsuccessful claims] are distinct in all respects from the successful claims . . . to pursue both claims, plaintiffs needed to develop [common facts] . . . [m]oreover, discovery for [one claim] led directly to the development [of the other] and certainly aided in the preparation and ultimate success of that claim").

However, there are certain aspects of the retaliation claim that are severable and therefore appropriately considered at step two of the analysis. First, Plaintiffs' attempt to incorporate Mr. Victory into its retaliation theory is distinguishable from the alleged retaliatory conduct of Defendants. Moreover, the fact that this claim was clearly rejected by the District Judge (Dkt. 217) makes it appropriate to reduce Plaintiffs' requested hours at step two. After review of Plaintiffs' counsel's billing records, including the research performed by Mr. Ignacio on this question, the Court has identified 12 hours associated with this issue and will reduce Mr. Ryu's award accordingly. Second, the Court rejected Plaintiffs' punitive damages arguments with respect to the retaliation claims. (Dkt. 232 at 4). Here again, the Court finds this issue to be distinct from the recognized elements of a retaliation claim and therefore appropriate to consider at step two of the analysis. After review of Plaintiffs' counsel's billing records, the Court has identified 6.4 hours associated with this issue and will reduce Mr. Ryu's award accordingly. Third, some Plaintiffs requested injunctive relief with respect to Defendants' alleged retaliatory conduct. (*See, e.g.*, No. 1:21-cv-408, Dkt. 1 at 6-7). The Court, however, declined to issue temporary restraining orders or preliminary injunctions. (*See, e.g.*, No. 1:21-cv-408, Dkt. 12). After review of Plaintiffs' counsel's billing records, the Court has identified 12 hours associated with this issue and will

reduce Mr. Ryu's award accordingly.  Although the injunctive relief sought was generally related to the underlying retaliation claim, the fact that the District Judge specifically rejected this claim and because it was addressed separately by the Court, the reduction was applied at step two.[36]

### c. Step Two Adjustments to the Lodestar Figure

Based on the findings above, the Court finds the adjusted amount of legal fees at step two to be $543,688.35.[37]

### Step 3: Awarding a Percentage Based on the Degree of Success

The third and final step of the attorneys' fees analysis requires the Court to "award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Robinson*, 560 F. 3d at 244. "Indeed, the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Doe v. Chao*, 435 F. 3d 492, 506 (4th Cir. 2006). "The degree of success is measured by two reference points, namely the amount sought at the outset of the litigation and the damages and relief awarded." *Matias Guerra*, 2019 WL 3297323, at *9; *Cho*, 2020 WL 1056294 at *20–21; *McNeil*, 2017 WL 9771834, at *11 (quoting *Jackson*, 391 F. App'x at 244) ("the amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded").  But this does not mean that "fee awards . . . should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *Matias Guerra*, 2019 WL 3927323, at *9 (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 574

---

[36]    As noted above, Defendants bundle their arguments and fail to attribute their objections to a particular step of the attorney's fee analysis.  The issues regarding the retaliation claims could be appropriately addressed under either step one as unnecessary hours expended or step two as unsuccessful claims.  The reduction in the number of hours would be the same under either step and therefore does not impact the ultimate award of attorney's fees.  Moreover, the Court has ensured that each objection was addressed only once to guard against multiple reductions for the same issue.

[37]    The figure was calculated by first multiplying the number of hours reduced in step two by Mr. Ryu's approved hourly rate (66.8 x 413), which equals $27,588.40.  The Court then subtracted $27,588.40 from $571,276.75, which is the loadstar figure from step one.  This results in an amount of $543,688.35 at the conclusion of step two.

(1986)); *see also Nigh v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 190 (4th Cir. 2007) (holding that courts may not "reflexively reduce fee awards whenever damages fail to meet a plaintiff's expectations in proportion to the damages' shortfall"). The amount recovered is "just one of many factors to consider," but courts must give "primary consideration to the amount of damages sought to constrain a court's discretion in setting an award." *Cho*, 2020 WL 1056294 at 21 (internal quotation marks and citations omitted) (quoting *Doe*, 435 F. 3d at 506).

The relief sought and obtained in this case are as follows:

| Plaintiff | Relief Sought | Settlement[38] |
|---|---|---|
| Hye Young Son | Wage Claim: $59,063.33 (Dkt. 13 at 8) | $ |
| Kyong Sim Che | Wage Claim: $37,900.20 (Dkt. 13 at 8)<br><br>Retaliation Claim: not less than $25,000 (punitive damages) (Dkt. 66 at 7–8). | $ |
| Jae Min Lee | Wage Claim: $26,442 (Dkt. 13 at 8) | $ |
| Myeong Suk Choi | Wage Claim: $109,690.30 (Dkt. 13 at 9)<br><br>Retaliation Claim: not less than $25,000 (punitive damages) (Dkt. 66 at 7–8). | $ |
| Soonkum Park | Wage Claim: $32,876 (Dkt. 109 at 9) | $ |
| Bo Young Lee | Wage Claim: $40,542.86 (Dkt. 109 at 9) | $ |
| Heesang Kim | Wage Claim: $39,068.23 (Dkt. 109 at 9)<br><br>Retaliation Claim: not less than $25,000 (treble and punitive damages) (Dkt. 16 at 19)<br><br>VA Civil Conspiracy: $25,000 (treble and punitive damages) (No. 21-cv-756 Dkt. 16 at 20) | $ |
| Yoon Hee Oh | Wage Claim: $54,685.79 (Dkt. 109 at 9)<br><br>Retaliation Claim: not less than $25,000 (punitive damages) (Dkt. 109 at 120) | $ |
| Yoon Jung Yim | Wage Claim: $61,089.64 (Dkt. 109 at 9)<br><br>Retaliation Claim: not less than $25,000 | $ |

---

[38]   The settlement amounts have been redacted from the publicly available version of this opinion as the terms of the settlement remain confidential by the agreement of the parties.

| | (punitive damages) (Dkt. 109 at 13) | |
|---|---|---|
| Myoung Hui Montgomery | Wage Claim: $86,964.80 (No. 1:21-cv-696 Dkt. 20 at 22)<br><br>VA Fraud, Breach of Fiduciary Duty, Civil Conspiracy: "amount to be determined"<br>(No. 1:21-cv-696 Dkt. 20 at 23) | $█████ |

Given the above, Plaintiffs' counsel clearly achieved a significant degree of success for his clients in this action. But, as Defendants point out, "nine of ten Plaintiffs received less than 50% of the damages they alleged in their Complaints" (Dkt. 266 at 4). The Court notes that one plaintiff, Jae Min Lee, received a settlement significantly higher than her initial request for relief. The final settlement amounts are important factors, but the Court also considers, among other things, the legal work required to achieve the settlements and the quality and the quantity of Plaintiffs' evidence. After careful consideration, the Court finds that an additional reduction of 35% to Plaintiffs' counsels' fee award of $543,688.35 (the amount the Court determined appropriate at the conclusion of step 2) will be assessed to account for the degree of success achieved. This results in a final fee award of $353,397.43. Although this award is $60,147.43 more than the total amount that all 10 plaintiffs settled for, strict proportionality is not required and it is quite common for "attorneys' fees awards [to] substantially exceed damages in FLSA cases." *Cho*, 2020 WL 1056294 at *21–22 internal quotation marks omitted) (quoting *Atkins v. Sunbelt Rentals*, 2016 WL 3647610, at *4 (D. Md. June 30, 2016)). As noted earlier, this fee award breaks down to $35,339.74 per plaintiff, a figure that the Court finds reasonable on its face given the nature of the case.

## III.    Costs of Litigation

In addition to awarding attorneys' fees, "district courts have the discretion to determine the

costs that will be assessed [] in FLSA cases." *Andrade*, 852 F. Supp. 2d at 644.  The costs that may be charged include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services," including "necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying." *Cho*, 2020 WL 1056294 at *22 (internal quotation marks omitted) (quoting *Almendarez v. J.T.T. Enterprises Corp.*, 2010 WL 3385362, at *7 (D. Md. Aug. 25, 2010)).

Here, Plaintiffs request (after revision) $39,047.18 in costs and expenses associated with this litigation. (Dkt. 273 at 30). In support, they provide an itemized list of costs (integrated into their time records) (Dkt. 253 at 1) and a breakdown by event in their "Summary of Procedural History and Billing." (Dkt. 253 at 5–16). A review of the record reveals that these claimed costs are reasonable and sufficiently detailed, except with respect to two instances where Plaintiffs' counsel paid $1,205.10 and $941.94 for the videotaping of depositions without explaining why such a step was necessary.  (Dkt. 253-1 at item # 62, 73); *Cho*, 2020 WL 1056294, at *22 (deducting "$900 for videographers for two depositions" where no "explanation for why videotaping was necessary" was given).  Defendants' only qualm with Plaintiffs' costs and expenses request is that "Plaintiffs seek[] $7,590.30 for interpreters and depositions of individuals who were only relevant to Plaintiffs' valueless retaliation claims," making those costs "unrelated to and unnecessary for Plaintiffs to resolve this matter." (Dkt. 266 at 24 (quoting *Jackson v. Estelle Place, LLC*, 2009 WL 1321506, at *5 (E.D. Va. May 8, 2009)).  However, these expenses will not be deducted, given the Court's analysis at step two.

For these reasons, the Court will apply a $2,147.04 deduction to the claimed $39,047.18 in costs and expenses and award Plaintiffs' counsel $36,900.14 on this point.

### IV.   Conclusion

For the aforementioned reasons, it is hereby

**ORDERED** that Plaintiffs' Motion for Attorney's Fees (Dkt. 253) is **GRANTED-IN-PART**; it is further

**ORDERED** that Plaintiffs' counsel will be awarded a total of **$390,297.57**, consisting of **$353,397.43** for attorneys' fees and **$36,900.14** for costs and expenses; it is further

**ORDERED** that payment shall be made within 60 days of entry of this Order.

**ENTERED** this 5th day of December, 2024.


_William C. Fitzpatrick_
WILLIAM E. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

Alexandria, Virginia